OPINION
{¶ 1} Marlon Simms appeals his conviction for three counts of violation of a protection order, R.C. 2919.27(A)(1), misdemeanors of the first degree. Appellant was sentenced and this appeal followed.
 {¶ 2} On December 16, 2004, the Franklin County Municipal Court issued a temporary protection order against appellant in case No. 2004 CRB 30917. The protected party was Jessica Lundberg. The protection order was in force from the date of issuance through March 28, 2005. Under the terms of the order, appellant was prohibited from initiating or having any contact with the protected party.
 {¶ 3} On December 16, 2004, within hours of the issuance of the temporary protection order, appellant began telephoning the victim.[1] Affidavits charging appellant with two counts of violating a protection order were filed on December 30, 2004 in Municipal case numbers 04 32797-1 and 04 32797-2 and warrants were issued for appellant's arrest.
 {¶ 4} On March 7, 2005, four additional affidavits were filed charging appellant with violation of the same protection order. The violations alleged appellant contacted the victim on February 3, 2005, twice on February 17, 2005, and once on February 22, 2005.
 {¶ 5} Appellant was arrested on February 22, 2005 on the first set of warrants and again on March 3, 2005 on the remaining warrants. A pretrial was held on March 1, 2005. Trial on both cases were scheduled for March 28, 2005. On that date, the trial court filed a journal entry that continued trial to April 26, 2005 at the request of the defendant. On April 26, 2005, the cases were continued to May 23, 2005 at the defendant's request. Defense counsel was unavailable on May 23 and requested a continuance to May 24, 2005.
 {¶ 6} On May 24, 2005, trial was continued to July 6, 2005 for the stated reason that the defendant had "fired his attorney/withdrawn." The court appointed private counsel to represent appellant.
 {¶ 7} On July 6, 2005, the date scheduled for trial, appellant waived trial by jury and elected to be tried by the court. Appellant was found guilty and was sentenced.
 {¶ 8} Appellant raises five assignments of error:
I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING THE APPELLANT HIS RIGHT TO SPEEDY TRIAL UNDER O.R.C. 2945.71, THESIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE I, OHIO CONSTITUTION.
II. THE COURT ERRED IN FAILING TO CONSIDER ALL OF THE FACTORS LISTED IN O.R.C. 2929.22 FOR IMPOSING A SENTENCE.
III. THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM, CONSECUTIVE SENTENCES.
IV. THE TRIAL COURT ERRED AND THEREBY DEPRIVED THE APPELLANT, MARLON SIMMS, OF DUE PROCESS OF LAW AS GUARANTEED BY THEFOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION BY FINDING MR. SIMMS GUILTY, AS THE VERDICT FOR THE OFFENSE OF VIOLATION OF A TEMPORARY PROTECTION ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
V. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 9} In his first assignment of error, appellant claims denial of his right to a speedy trial under both theSixth Amendment, Section 10, Article I, Ohio Constitution, and the provisions of R.C. 2945.71 et seq. For the following reasons, we find that the first assignment of error lacks merit.
 {¶ 10} First, appellant failed to raise his claim in the trial court. See R.C. 2945.73(B).[2] Therefore, appellant waived all but plain error on his statutory claims. E.g. Statev. Phillips (1995), 74 Ohio St.3d 72, at 98-99, citing State v.Williams (1977), 51 Ohio St.2d 112. For the reasons that follow, we find that no error took place.
 {¶ 11} We begin with an analysis of appellant's statutory speedy trial claim. Appellant was charged with multiple violations of R.C. 2929.27, violation of a protection order. Each charge was a misdemeanor of the first degree carrying a maximum sentence of up to six months in jail. Hence, appellant was entitled to be tried within 90 days of his arrest, unless R.C.2945.72 extended the time for trial. See R.C. 2945.71(B)(2). Appellant was arrested on the first two counts on February 22, 2005.[3] Therefore, unless extended by R.C. 2945.72, appellant was entitled to trial on or before May 23, 2005.
 {¶ 12} The time for trial may be extended for reasons set out in R.C. 2945.72. As relevant to this appeal, R.C. 2945.72
provides as follows:
The time within which an accused must be brought to trial * * * may be extended only by the following:
* * *
(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;
* * *
(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]
 {¶ 13} The record on appeal shows that the case was initially scheduled for trial on March 28, 2005. Appellant asserts that his cases were "continued four times against his wishes." (Brief, at 1.) However, a review of the record on appeal does not support this claim. The journal entries for the four continuances following the initial trial date indicate the continuances were granted at the request of the defendant.[4] Pursuant to R.C. 2945.72(H), none of the time that elapsed from March 28 through May 24, 2005 was charged against the state. The journal entry granting the final continuance indicates the delay was because the defendant "fired" his public defender and new counsel had to be appointed by the court. Pursuant to R.C. 2945.72(C), the period from May 24 through July 6, 2005 was not chargeable against the state. Thus, as of the day of trial, July 6, 2005, only the 34 days from appellant's arrest on February 22, 2005 through the first trial date of March 28, 2005 were chargeable against the 90 days within which the state was required to bring appellant to trial. Therefore, appellant's statutory speedy trial claim fails.
 {¶ 14} Appellant's claims under the Sixth Amendment and Section 10, Article I, Ohio Constitution also fails. First, as with the statutory claim, appellant failed to raise his claim in the trial court. While that failure does not completely foreclose appellant's right to raise a constitutional challenge, the failure to assert his Sixth Amendment right is a factor to consider under the balancing test of Barker v. Wingo (1972),407 U.S. 514, 92 S.Ct. 2182.
 {¶ 15} Under Barker, a Sixth Amendment speedy trial claim cannot be established by an inflexible rule. Instead, a court must consider factors such as the length of and reason for the delay, the defendant's assertion of the right and prejudice to the defendant. Id. In Barker, the defendant was not brought to trial for over five years after his arrest on murder charges. During that time, the prosecution had obtained numerous continuances of trial. Barker made no objection to those continuances until three and one-half years had passed. After balancing the various factors, the Supreme Court of Ohio upheld the denial of Barker's Sixth Amendment speedy trial claim.
 {¶ 16} In this case, applying the Barker balancing test, there is nothing to support appellant's constitutional speedy trial claim. Appellant was tried within four and one-half months of his arrest during which time appellant either requested or created the need for every continuance of trial. Appellant demonstrates no prejudice to his case as a result of this minimal delay. The first assignment of error is overruled.
 {¶ 17} In his second assignment of error, appellant states the trial court failed to consider various statutory sentencing criteria. In the absence of some contrary showing, a court is presumed to have considered statutory sentencing criteria. Statev. Adams (1988), 37 Ohio St.3d 295, paragraph three of the syllabus. See State v. Wolfe (Apr. 19, 2005), Ashland App. No. 04 COA 065. Although he argues he was entitled to mitigation of punishment, appellant does not point to any evidence that the trial court failed to properly consider the criteria of R.C.2929.22(B). The second assignment of error is overruled.
 {¶ 18} Appellant's third assignment of error asserts that the imposition of maximum sentences to be served consecutively violates the provisions of R.C. 2929.22(C). That section provides that a court may impose the longest sentence only where the court finds that the offender committed the worst form of the offense or whose conduct and response to prior sanctions demonstrate that the longest sentence is necessary to deter future crime.
 {¶ 19} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio applied Apprendi v. New Jersey
(2000), 530 U.S. 466, 120 S.Ct. 2348, and Blakely v. Washington
(2004), 542 U.S. 296, 124 S.Ct. 2531 to Ohio's sentencing statutes. Foster struck down as unconstitutional, R.C.2929.14(B) and (C), which required fact-finding before a court could impose more than a minimum sentence, or impose the longest sentence authorized by the legislature. The court severed those provisions and upheld the balance of the Ohio sentencing statutes. Under Foster, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. Foster is to be applied to cases pending on direct review at the time that decision was announced.
 {¶ 20} While Foster reviewed sentencing in felony cases, the same reasoning applies to sentencing in misdemeanor cases. With respect to maximum sentences, R.C. 2929.22(C) is analogous to 2929.14(C). Both require the sentencing court to make specific factual findings before imposing the longest authorized sentence. There is no basis to distinguish the factual findings required to impose a maximum sentence in a misdemeanor case from the factual findings required to impose a maximum sentence in a felony case. Therefore, insofar as R.C. 2929.22(C) requires findings before imposing the longest sentence authorized by the legislature, that portion of the statute is unconstitutional. Id.
 {¶ 21} Foster applies to cases pending on direct review when that decision was announced. The question remains whether all cases pending on direct appeal and involving sentencing determinations based on fact-finding must be remanded for re-sentencing or whether "ordinary prudential doctrines," such as waiver, may be applied. See United States v. Booker (2005),543 U.S. 220, 125 S.Ct. 738.
 {¶ 22} Foster did not announce a new constitutional rule. As noted above, Foster applied Apprendi and Blakely to Ohio statutes. None of the litigants in Foster raised theirSixth Amendment claims under Blakely at the trial level because their pleas or guilty findings occurred before Blakely was decided.[5] Accordingly, the state's waiver argument raised in the Foster case was rejected and each of the cases involved in that decision was remanded to the trial court for re-sentencing. Foster does not appear to have rejected the doctrine of waiver under all circumstances.
 {¶ 23} In Booker, the Supreme Court of Ohio provided guidance to federal appellate courts when applying that decision:
As these dispositions indicate, we must apply today's holdings-both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act-to all cases on direct review. * * * That fact does not mean that we believe that every sentence gives rise to a Sixth Amendment violation. Nor do webelieve that every appeal will lead to a new sentencing hearing.That is because we expect reviewing courts to apply ordinaryprudential doctrines, determining, for example, whether the issuewas raised below and whether it fails the" plain error" test.* * *
Id. at 268. (Emphasis added.)
 {¶ 24} Foster followed the remedial path set out inBooker. The language in Booker fits squarely with prior holdings of Ohio courts that have routinely applied the doctrine of waiver. See, e.g., State v. Comen (1990), 50 Ohio St.3d 206, citing Williams, at 116-117, vacated in part on other grounds,Williams v. Ohio (1978), 438 U.S. 911; State v. Broom (1988),40 Ohio St.3d 277, 288-289. The "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986),22 Ohio St.3d 120, syllabus.
 {¶ 25} There appears to be no reason why the traditional doctrine of waiver should not apply to claims that the Ohio sentencing statutes violate the principles of Blakely where the sentencing took place after the announcement of that decision. The Ninth Appellate District so held in State v. Dudukovich,
Lorain App. No. 05CA008729, 2006-Ohio-1309. Recently, this court applied the doctrine of waiver to Blakely claims under similar circumstances. State v. Draughon, Franklin App. No. 05AP-860, 2006-Ohio-2445.
 {¶ 26} Blakely was decided June 24, 2004. Appellant was sentenced on July 18, 2005, over one year after Blakely was decided. Appellant could have, but did not raise aSixth Amendment Blakely claim in the trial court at the time of his sentencing. Therefore, we apply those "ordinary prudential doctrines" and find that appellant waived any Sixth AmendmentBlakely claim in this case. See Booker, supra.[6] The third assignment of error is overruled.
 {¶ 27} Appellant's fourth assignment of error asserts that the verdict of the trial court was against the manifest weight of the evidence. Appellant correctly states that, on review, an appellate court sits as a "thirteenth juror" on issues of weight of the evidence. The reviewing court examines the entire record, weighs the evidence and all reasonable inferences to be drawn therefrom, considers the credibility of the witnesses and resolves conflicts in the evidence to determine if the trier of fact lost its way. State v. Thompkins (1997),78 Ohio St.3d 380.
 {¶ 28} Having done so, we cannot say that the trial court lost its way or that the court should have believed the defendant and rejected the victim's testimony. In fact, appellant admitted during cross-examination that he was aware of and understood the terms of the protection order, but contacted the victim anyway. In this case, it is clear that appellant acted knowingly, a higher culpable mental state than the element of recklessness required for a violation of R.C. 2919.27. His claim that he was merely returning her call does not ring true when considered in light of his recorded conversations. Moreover, the protection order does not contain any exception to the order for contact initiated by the victim. The protection order prohibits contact, period. Such circumstances may well mitigate the offense; they do not negate the offense. The fourth assignment of error is overruled.
 {¶ 29} In his final assignment of error, appellant claims he received ineffective assistance of trial counsel in violation of the Sixth Amendment. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052 sets the standard for claims of ineffective counsel. Paraphrased, Strickland requires a defendant who makes an ineffectiveness claim to demonstrate that his counsel's performance fell below an objective standard for the effective assistance of counsel and that the deficient performance prejudiced the accused. Appellant lists several instances that he feels demonstrate the lack of effectiveness of trial counsel. We discuss each instance in order.
 {¶ 30} Appellant first claims his attorney(s) ignored his requests for a prompt trial and insisted that he plead guilty. Appellant does not identify any portion of the record that supports his claim that he opposed the several continuances that the record shows were granted on the request of the defense. Moreover, counsel can waive the time within which trial is to be held and that waiver binds the accused even though it is without his consent. State v. McBreen (1978), 54 Ohio St.2d 315.
 {¶ 31} Appellant argues that his attorney was ineffective because his attorney insisted that he plead guilty. Again, the record does not bear this out. Instead, the record includes a document filed on July 6, 2005, signed by appellant, appellant's counsel, and the trial judge in which appellant acknowledged the advice of his attorney, the nature of the state's plea offer and proposed sentencing recommendation.[7] The written acknowledgment included defense counsel's professional opinion of what was in the best interests of his client and his professional view that the evidence appellant wished to present at trial went to mitigation, rather than to a defense. Nevertheless, appellant wished to exercise his right to put the state on its proof. Counsel respected that choice. Counsel vigorously cross-examined the prosecution's witness and argued on behalf of his client. There is no basis to conclude that, by giving professional advice as to what counsel felt was in the best interests of his client, that counsel was derelict in his performance.
 {¶ 32} Appellant argues that, if trial counsel had not committed what he perceives to be errors, appellant "would not have become frustrated with the court system and developed a reputation as a malcontent." Appellant believes that counsel's deficiencies caused him to be sentenced to jail rather than probation. Again, the record does not bear out this claim. The trial court discussed probation with appellant. Appellant flatly rejected that option and indicated that, if placed on probation, he would not comply and would not appear at the probation office. It appears that appellant could not get along with more than one attorney assigned to his case. Neither counsel nor counsel's performance created appellant's attitude. There is no basis to find that counsel was ineffective in this matter.
 {¶ 33} Appellant argues that trial counsel should have objected to the playing of the telephone tapes on grounds that they were hearsay, not properly authenticated, lacked a foundation, that there was a failure of the "chain of custody," and that their prejudicial impact outweighed their probative value. None of these proposed objections has merit.
 {¶ 34} The statement of a party opponent is, by definition, not hearsay. Evid.R. 801(D)(2)(a). Once the victim identified appellant's voice on the recordings, any objection on hearsay grounds would have been frivolous.
 {¶ 35} The tapes were authenticated when the victim identified them as telephone calls from appellant and identified his voice on the tapes. Evid.R. 901(A), (B)(5) and (6). The tapes were not merely presented in court without explanation. The victim testified that the calls were made to her telephone and when they occurred. Ample foundation for their admission exists. Counsel could not be ineffective in failing to object to properly authenticated and identified, non-hearsay.
 {¶ 36} Finally, as a general matter, "the state [is] not required to prove a perfect, unbroken chain of custody." Statev. Keene (1998), 81 Ohio St.3d 646, 662, as quoted in State v.Gross, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶ 57, certiorari denied by Gross v. Ohio (2003), 538 U.S. 1037, 123 S.Ct. 2079. Appellant's "chain of custody" argument is better suited to evidence that cannot be readily identified, or could be despoiled, altered, or subject to tampering. Even where there is a possibility of contamination, that possibility goes to the weight to be given the evidence, not its admissibility. State v.McGuire (1997), 80 Ohio St.3d 390, 402-404. Here, there is not the slightest hint that the tape recordings were subjected to alteration or tampering. Moreover, appellant admitted he made the calls.
 {¶ 37} There is no basis to find that trial counsel was ineffective. The fifth assignment of error is overruled.
 {¶ 38} Having overruled each assignment of error, the judgment of the Franklin County Municipal Court is affirmed.
Judgment affirmed.
Petree and Whiteside, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] At trial, appellant admitted he was served with, read and understood the temporary protection order before he began telephoning the victim. He claimed his calls were in response to telephone calls initiated by the victim.
[2] A charge is subject to dismissal under R.C. 2945.73 "[u]pon motion made at or prior to the commencement of trial." Under the statute, failure to raise a statutory speedy trial violation results in waiver of that claim.
[3] Because he was being held on more than one charge, the provision that counts each day in jail as three days does not apply.
[4] The form entry has a space to indicate which party requested the continuance. The trial court inserted , the symbol for the Greek letter delta. In the legal community, a delta is commonly used to denote the defendant while the Greek letter pi is used to signify the plaintiff.
[5] Blakely was decided on June 24, 2004.
[6] Appellant did not raise a Blakely claim in the trial court below and does not argue that his sentence amounted to plain error. Therefore, we do not address whether a Blakely
violation can or should be considered under the plain error doctrine.
[7] The state proposed to recommend to the court that appellant be placed on probation with counseling if he chose to remain living in Franklin County. If appellant chose to move back to Cleveland, the state offered to recommend "non-reporting" probation.