OPINION
{¶ 1} This is an appeal from a conviction and sentence imposed in the Franklin County Court of Common Pleas against defendant-appellant, Michael Davis. On September 24, 2004, the Franklin County Grand Jury returned an indictment charging Davis with one count of rape, R.C. 2907.02 and one count of kidnapping, R.C. 2905.01, both felonies of the first degree. On February 22, 2005, appellant exercised his right to a trial by jury. The trial concluded with a guilty verdict on both counts. Appellant was sentenced to concurrent terms of six years in prison and this appeal followed.
 {¶ 2} At trial, the alleged victim, Jessica Price, testified that she had met appellant sometime in 1997 through her fiancé, Wilson Sutton. She knew appellant only as "Mike." Appellant came to Sutton's home three or four times a week. Sutton was killed in an auto accident in 2001, and Price did not have much social contact with his friends. Price became reacquainted with appellant in late 2003.
 {¶ 3} Price had known Keith Carroll since she moved to Columbus in 1996. Carroll had been a friend of appellant for ten years. On January 6, 2004, Price arranged to meet Carroll for drinks at Putter's Pub. Carroll told Price he was meeting appellant at the bar. When Price arrived, Carroll was talking with appellant. The three reminisced for awhile, and then went to Price's apartment to look at scrapbooks and photographic memorabilia. Price testified she had a total of two glasses of wine during the entire evening.
 {¶ 4} According to Price, Carroll received a telephone call that his son was ill and she agreed to drive him home. According to Carroll, he did not receive a telephone call, but he agreed that he asked Price to drive him home because he was tired. Either way, Price drove Carroll to his home while appellant remained at Price's apartment.
 {¶ 5} When Price returned, she and appellant continued to reminisce. Appellant tried to kiss Price. She told appellant she viewed him as a brother and was uncomfortable with his actions. Appellant persisted in trying to kiss Price who continued to rebuff his advances both verbally and by moving to different locations in the room. Appellant pulled Price to the floor and said: "We can do this the easy way, or we can do it the hard way." (Tr. at 65-66.) Price testified she tried to kick appellant away from her, but he overpowered her by choking her to the point of unconsciousness. He pulled off her pants and engaged in vaginal intercourse, telling the victim that he would kill her if she resisted and cocked his fist as if to punch her in the face. After the rape, appellant threatened Price with death if she reported the assault. Appellant spent the night at the victim's apartment.
 {¶ 6} The next morning, Price busied herself in her kitchen until appellant demanded that she drive him to work. She complied, then called a female friend and reported what had happened. She changed her clothing and went to Riverside Methodist Hospital where a sexual assault examination was performed. According to the victim, it never occurred to her to bring the clothing that she had on at the time of the rape.
 {¶ 7} Debra Zang, a nurse assigned to perform sexual assault examinations, described Ms. Price as reluctant to give details of the assault, occasionally tearful and concerned for her safety. Although no trauma was observed during the examination, Zang explained that 85 percent of women examined after sexual assaults display no injuries.
 {¶ 8} After the physical examination, Detective Mary Harrison of the Columbus Police Department interviewed the victim. Harrison testified that Ms. Price was crying and was visibly upset. The victim did not give appellant's name to the detective. Price explained that because appellant had threatened to kill her if she told anyone about the rape, she was afraid to identify him to the detective. Price said she knew she would have to move from her apartment to be safe from appellant's threat. In March 2004, after she had found another place to live, Price called Detective Harrison and gave the detective appellant's name and address. Semen found on the victim's pants was matched with appellant through DNA analysis.
 {¶ 9} Appellant's friend, Keith Carroll, admitted he had spoken with appellant on a daily basis since the charges were filed. His conversations included the topic of the rape case pending against appellant. After admitting his own theft and drug related criminal convictions, Carroll recounted his version of the events of January 6, 2004. According to Carroll, when he, appellant and Price returned to her apartment, Price offered the two men "ecstasy."[1] When both men declined, Price took the drug along with some wine. Later, Price drove him home.
 {¶ 10} Appellant testified on his own behalf. He admitted a prior conviction for forgery, then testified that the sexual encounter with Price was consensual. Appellant explained that Price drove Carroll home so that she could be alone with appellant and engage in sex. Appellant denied choking the victim or using force to compel her to engage in sex with him. The next morning, Price drove him to work and asked him for $800 to pay some bills. Later, Price called him and said she was afraid that he had given her a venereal disease; that she was going to the doctor and if he had infected her, he was "going to pay."
 {¶ 11} In rebuttal, Detective Scott Leroy testified that he interviewed appellant following the victim's allegations. Appellant denied knowing Price. Appellant denied having any friends that had died in an automobile accident over the past several years. He continued to deny that he knew Price even after the detective showed him her picture. However, when the detective began collecting a DNA sample from appellant, he admitted that he did know her and had engaged in consensual sex with her. Appellant explained that he had first denied knowing Ms. Price because he "didn't want to be caught in no sex scandal."
 {¶ 12} Appellant raises three assignments of error:
First Assignment of Error
The trial court erred by entering separate judgments of conviction for allied offenses of similar import in violation of R.C. 2941.25(A).
Second Assignment of Error
The trial court erred in imposing a term greater than the minimum sentence for a person with no prior history of imprisonment based on facts not found by the jury or admitted by appellant. This omission violated Appellant's rights to a trial by jury and due process under the state and federal Constitutions.
Third Assignment of Error
Appellant's convictions are against the manifest weight of the evidence.
 {¶ 13} In his first assignment of error, appellant argues that the restraint of the victim was incidental to the force needed to accomplish the rape and therefore, the trial court should have merged the two offenses for purposes of sentencing. See R.C. 2941.21(A) and State v. Logan (1979),60 Ohio St.2d 126. For the following reasons, we disagree and overrule the first assignment of error.
 {¶ 14} The common law, penal philosophy of merger for purposes of sentencing has been codified in R.C. 2941.25:
(A) Where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
Thus, where a robber compels the victim of the robbery to stand still long enough to relieve the victim of his valuables, automatically, the robber has also committed the offense of kidnapping: a restraint for the purpose of committing the robbery offense. Likewise, where the restraint of the victim is no greater than that necessary to engage in forced sexual activity, the sexual offender has automatically committed a kidnapping under R.C. 2905.01(4). See Logan, supra. In both instances, R.C. 2941.25(A) would require the trial court to merge the convictions and impose only one sentence.
 {¶ 15} However, conviction and sentencing for both rape and kidnapping are authorized by R.C. 2941.25(B) where the restraint or movement of the victim is not merely incidental to the underlying crime, but is prolonged or the confinement is secretive or there is a significant increase in the risk of harm to the victim separate and apart from that involved in the underlying crime. Thus, even though the restraint necessary for a kidnapping is only incidental to the rape, the two offenses may involve a separate animus where the victim is subjected to a substantial increase in the risk of harm separate from that involved in the rape itself. State v. Powell (1990),49 Ohio St.3d 255, 262.
 {¶ 16} Here, according to the testimony of Ms. Price, appellant choked her to the point that she was rendered unconscious. Price could have died as a result of strangulation. This substantially increased the risk of harm to Price separate and apart from the harm involved in the rape itself. Therefore, we find that appellant committed the crime of kidnapping with a separate animus from that involved in the crime of rape. The trial court did not err in sentencing appellant on both kidnapping and rape. The first assignment of error is overruled.
 {¶ 17} In his second assignment of error, appellant argues that his Sixth Amendment right to trial by jury was violated when the trial court made various factual findings required by statute before the court could impose more than the minimum sentence authorized by the General Assembly. Appellant advances his argument based on the decisions of the Supreme Court of Ohio inApprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348; and Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531. For the following reasons, we find that appellant has waived his Sixth Amendment claim by failing to raise the claim in the trial court.
 {¶ 18} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio applied Apprendi and Blakely to Ohio's sentencing statutes. Foster struck down as unconstitutional, R.C. 2929.14(B) and (C), which required fact-finding before a court could impose more than a minimum sentence, or impose the longest sentence authorized by the legislature. The court severed those provisions and upheld the balance of the Ohio sentencing statutes. Under Foster, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. Foster is to be applied to cases pending on direct review at the time that decision was announced.
 {¶ 19} While Foster applies to cases pending on direct review when that decision was announced, the question remains whether all cases pending on direct appeal and involving sentencing determinations based on fact-finding must be remanded for re-sentencing or whether "ordinary prudential doctrines," such as waiver, may be applied. See United States v. Booker
(2005), 543 U.S. 220, 125 S.Ct. 738.
 {¶ 20} Foster did not announce a new constitutional rule. As noted above, Foster applied Apprendi and Blakely to Ohio statutes. None of the litigants in Foster raised their Sixth Amendment claims under Blakely at the trial level because their pleas or guilty findings occurred before Blakely was decided.[2] Accordingly, the state's waiver argument raised in the Foster case was rejected and each of the cases involved in that decision were remanded to the trial court for re-sentencing. Nothing in Foster indicates that the court has rejected the doctrine of waiver in all sentencing cases.
 {¶ 21} In Booker, the Supreme Court of Ohio provided guidance to federal appellate courts when applying the court's decision:
As these dispositions indicate, we must apply today's holdings-both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act — to all cases on direct review. * * * That fact does not mean that we believe every sentence gives rise to a Sixth Amendment violation. Nor do webelieve that every appeal will lead to a new sentencing hearing.That is because we expect reviewing courts to apply ordinaryprudential doctrines, determining, for example, whether the issuewas raised below and whether it fails the "plain error" test.
* * *
Id. at 268. (Emphasis supplied.)
 {¶ 22} Foster followed the remedial path set out inBooker. The language in Booker fits squarely with prior holdings of Ohio courts that have routinely applied the doctrine of waiver. See, e.g., State v. Comen (1990), 50 Ohio St.3d 206, citing State v. Williams (1977), 51 Ohio St.2d 112, 116-117, vacated in part on other grounds, Williams v. Ohio (1978),438 U.S. 911, 98 S.Ct. 3137; State v. Broom (1988),40 Ohio St.3d 277, 288-289. The "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986),22 Ohio St.3d 120, paragraph three of the syllabus.
 {¶ 23} There appears to be no reason why the traditional doctrine of waiver should not apply to claims that the Ohio sentencing statutes violate the principles of Blakely where the sentencing took place after the announcement of that decision. The Ninth Appellate District so held in State v. Dudukovich,
Lorain App. No. 05CA008729, 2006-Ohio-1309. Recently, this court applied the doctrine of waiver to Blakely claims under similar circumstances. See State v. Draughon, Franklin App. No. 05AP-860, 2006-Ohio-2445. See, also, State v. Simms, Franklin App. No. 05AP-806, 2006-Ohio-2960 (applying the doctrine of waiver to Apprendi and Blakely claims in misdemeanor sentencing).
 {¶ 24} Blakely was decided June 24, 2004. Appellant was sentenced on April 28, 2005, ten months after Blakely was decided. Appellant could have, but did not raise a Sixth Amendment Blakely claim in the trial court at the time of his sentencing. Therefore, we apply those "ordinary prudential doctrines" and find that appellant waived any Sixth AmendmentBlakely claim in this case. See Booker, supra.[3] The second assignment of error is overruled.
 {¶ 25} Appellant's third assignment of error asserts that the verdict of the jury is against the manifest weight of the evidence. Appellate review of a claim that a verdict is against the manifest weight of the evidence requires the reviewing court to review the entire record, weigh the evidence and all reasonable inferences, to consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. Reversal will be ordered in only the most exceptional cases in which the evidence weighs heavily against conviction. Id.
 {¶ 26} Appellant testified at his trial and admitted having sex with Price. Therefore, the sole remaining contested issue before the jury was whether that sexual act was consensual, as appellant claimed, or forced as Price claimed. Appellant concedes that victims of trauma such as rape may respond in different and sometimes illogical ways. However, appellant argues: "Ms. Price's account of what happened after this sexual encounter gives credence to the defense description of a consensual, and not a criminal, act." (Brief, at 15.) Accordingly, appellant reasons that the conviction is against the manifest weight of the evidence.
 {¶ 27} As appellant candidly admits, victims of sexual assault may respond to that criminal act in different and sometimes seemingly illogical ways. Having reviewed the evidence under the standard set down in Thompkins, we cannot say that this appeal presents that "exceptional case in which the evidence weighs heavily against the conviction." Id. at 387. The testimony of the victim is not incredible. The testimony of defendant and his friend, Carroll, is not so compelling that we must accept it. In sum, there is nothing about this case that sets it apart from the normal case in which the credibility of witnesses is primarily for the jury as trier of the fact. We find ample evidence to support the jury verdict that appellant was guilty of forcible rape and kidnapping. Accordingly, the third assignment of error is overruled.
 {¶ 28} Having overruled each of appellant's three assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Klatt, P.J., and McGrath, J., concur.
[1] Ecstasy, a controlled substance, is a powerful stimulant with the ability to produce hallucinogens.
[2] Blakely was decided on June 24, 2004.
[3] Appellant did not raise a Blakely claim in the trial court and does not argue that his sentence amounted to plain error. Therefore, we do not address whether a Blakely violation can or should be considered under the plain error doctrine.