OPINION
{¶ 1} Defendant-appellant, Jamel D. Curtis, appeals from his convictions for one count of aggravated murder, two counts of murder, two counts of aggravated robbery, and one count of kidnapping. For the following reasons, we affirm.
 {¶ 2} On February 9, 2004, the Family Market was robbed and its owner, Andai Gebretensai, was shot and killed. On February 27, 2004, Zane's Gun Rack was robbed and its owner, Zane Wilson, was shot and killed. Evidence from the scene at Zane's Gun Rack led Detective Brian Carney of the Columbus Police Department to suspect that defendant had participated in both crimes.
 {¶ 3} In the early morning hours of March 1, 2004, Detective Carney and Detective David Harrington interrogated defendant at police headquarters. Before questioning defendant about the crimes, Detective Carney ascertained that defendant could read and write, that he did not have any hearing problems, that he did not wear glasses or contacts, and that he had not ingested any drugs or alcohol that day. Detective Carney then gave defendant a form entitled "Constitutional Rights," and he and defendant engaged in the following exchange:
[Detective Carney]: Okay. Have you ever had your constitutional rights read to you before?
Defendant Curtis: Um-hmm.
[Detective Carney]: Okay. So it's nothing new. See it. Same exact form except I've written on this one. Where it says "before," would you do me a favor and read that out loud?
Defendant Curtis: Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him present with you during questioning. If you are unable to pay for a lawyer, a lawyer will be appointed for you prior to any questioning if you so desire. If you wish to answer questions now without a lawyer present, you have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.
[Detective Carney]: Do you understand all that?
Defendant Curtis: Yeah.
[Detective Carney]: Do you have any questions about that?
Defendant Curtis: Can I get a public defender?
[Detective Carney]: Um-hmm. If you can't afford one, that's what the public defender is for, and they will be appointed for you. Defendant Curtis: Why do I need a lawyer though. I mean, why am I here?
[Detective Carney]: Go ahead and read this waiver section, and we'll kind of start the interview and tell you everything that's going on.
Defendant Curtis: I have read and been read the statement of my rights as written above. I understand what my rights are. I do not want a lawyer at this time. I am willing to answer questions. I understand and know what I am doing. No promises or threats — or threats have been made to me and no pressure of any kind has been used against me.
[Detective Carney]: Do you understand that section?
Defendant Curtis: (Indicates affirmatively.)
[Detective Carney]: Have any questions about that?
Defendant Curtis: I don't have no questions about that.
[Detective Carney]: Okay. You can sign right here. It states that you read and understand what your constitutional rights are. No admission of guilt or anything like that. It's just stating you understood and read your rights. Got it?
(Tr. at 365-367.)
 {¶ 4} Defendant signed his name to the waiver portion of the "Constitutional Rights" form, and Detective Carney told defendant that he was at police headquarters because he had been implicated in two crimes. During the interrogation that followed, defendant admitted to participating in the robbery of Zane's Gun Rack, although he denied shooting Wilson. When Detective Carney asked defendant about the Family Market robbery, defendant admitted to both robbing the store and shooting Gebretensai.
 {¶ 5} On March 10, 2004, the grand jury indicted defendant on the following counts: (1) aggravated murder, in violation of R.C.2903.01, with death penalty and firearm specifications; (2) aggravated murder, in violation of R.C. 2903.01, with death penalty and firearm specifications; (3) aggravated murder, in violation of R.C. 2903.01, with death penalty and firearm specifications; (4) aggravated robbery, in violation of R.C.2911.01, with a firearm specification; (5) kidnapping, in violation of R.C. 2905.01, with a firearm specification; (6) aggravated burglary, in violation of R.C. 2911.11, with a firearm specification; (7) aggravated murder, in violation of R.C.2903.01, with death penalty and firearm specifications; and (8) aggravated robbery, in violation of R.C. 2911.01, with a firearm specification. Defendant pled not guilty to each of the counts.
 {¶ 6} On October 15 and 20, 2004, defendant moved to suppress the statements he made during the March 1, 2004 interrogation. In support of his motions, defendant argued that the police violated his constitutional right to counsel by questioning him, and thus obtaining the statements at issue, after he had requested a lawyer. The trial court reviewed a videotape of defendant's interrogation and denied defendant's motions to suppress.
 {¶ 7} As part of its case-in-chief, the state introduced the videotape into evidence and played it for the jury. The state also introduced the "Constitutional Rights" waiver form that defendant signed before Detective Carney began questioning defendant about the two crimes.
 {¶ 8} After the close of evidence, the jury rendered a verdict as follows: (1) not guilty of aggravated murder, but guilty of the lesser included offense of murder; (2) not guilty of aggravated murder, but guilty of the lesser included offense of murder; (3) not guilty of aggravated murder and the lesser included offense of murder; (4) guilty of aggravated robbery; (5) guilty of kidnapping; (6) not guilty of aggravated burglary; (7) guilty of aggravated murder; and (8) guilty of aggravated robbery. Additionally, the jury found that defendant used a firearm while committing all of his offenses.
 {¶ 9} Because the jury found defendant guilty of the death penalty specification included in count seven, the trial moved into the death penalty phase. Ultimately, the jury recommended that defendant receive a life sentence without the possibility of parole.
 {¶ 10} At the June 28, 2005 sentencing hearing, the trial court sentenced defendant to imprisonment for: (1) 15 years to life as to counts one and two, which the trial court merged for sentencing purposes, with an additional three years for the use of a firearm; (2) ten years as to count four, with an additional three years for the use of a firearm; (3) ten years as to count five, with an additional three years for the use of a firearm; (4) life without parole as to count seven, with an additional three years for the use of a firearm; and (5) ten years as to count eight, with an additional three years for the use of a firearm. The trial court ordered that defendant serve each sentence consecutively, except for the three-year terms imposed for the firearm specifications included in counts one and seven. On July 1, 2005, the trial court reduced defendant's conviction and sentences to judgment.
 {¶ 11} Defendant now appeals from this judgment and assigns the following errors:
[1.] Appellant's confession was taken in violation of his 5th, 6th and 14th Amendment rights to the U.S. Constitution and in violation of his constitutional rights under Article I, Section 10 of the Ohio Constitution.
[2.] The trial court commits reversible error when it makes findings of fact to give a first time offender, non-minimum, maximum, consecutive sentences, when those facts were not proven beyond a reasonable doubt to the jury.
 {¶ 12} By his first assignment of error, defendant argues that the trial court should have suppressed his statements because he made them after the police ignored his request for a lawyer and, instead, interrogated him in violation of his constitutional right to counsel. We disagree.
 {¶ 13} A criminal suspect subject to a custodial interrogation has the right to consult with an attorney and to have an attorney present during questioning, and the police must explain this right to the suspect prior to questioning him.Miranda v. Arizona (1966), 384 U.S. 436, 479, 86 S.Ct. 1602. If a suspect requests counsel, all interrogation must cease until an attorney is present or the suspect himself initiates communication. Edwards v. Arizona (1981), 451 U.S. 477, 481,101 S.Ct. 1880; State v. Henness, 79 Ohio St.3d 53, 63,1997-Ohio-405. To invoke the right to counsel, a suspect must make a request with enough clarity that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis v. United States (1994),512 U.S. 452, 459, 114 S.Ct. 2350. See, also, Henness, at 63;State v. Williams, 99 Ohio St.3d 439, 2003-Ohio-4164, at ¶ 32. If the request is ambiguous or equivocal, the police may continue to question the suspect; they need not stop the interrogation to clarify whether the suspect actually invoked his right to counsel. Davis, at 461-462; State v. Jackson,107 Ohio St.3d 300, 2006-Ohio-1, at ¶ 93.
 {¶ 14} In the case at bar, defendant did not unambiguously, unequivocally request an attorney. Defendant's question, "[c]an I have a public defender?" can be interpreted in two different ways: either defendant was asking whether his rights, as he had just read them, included the right to a public defender or he was asking for access to a public defender. Detective Carney's response — that defendant would be entitled to a public defender if he could not afford to hire an attorney — indicates that he believed defendant wanted a clarification of his rights, not that he sought to invoke his right to counsel. Given the ambiguity inherent in defendant's question, we find that a reasonable police officer would come to the same conclusion, and thus, Detective Carney's decision to question defendant without counsel present did not violate defendant's right to counsel. See Statev. Foster, Trumbull App. No. 2000-T-0033, 2001-Ohio-8806 (asking "[w]ell, can I have a lawyer present?" was not a clear invocation of the defendant's right to counsel, and thus, a police detective could continue to question him).
 {¶ 15} Further, even if defendant had invoked his right to counsel, he subsequently initiated further communication with Detective Carney and waived his constitutional rights. As we stated above, once a suspect requests an attorney, interrogation must stop until an attorney is present or the suspect himselfinitiates communication. Edwards, supra, at 484-485 ("[A]n accused[,] * * * having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."). If the police proceed to interrogate the suspect after he initiates communication, then a court must determine whether the suspect validly waived his previously-invoked right to counsel. Oregonv. Bradshaw (1983), 462 U.S. 1039, 1044, 103 S.Ct. 2830; Statev. Gapen, 104 Ohio St.3d 358, 2004-Ohio-6548, at ¶ 52. Such a waiver must be knowing and intelligent and a court must find it to be so "`under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.'" Bradshaw, at 1046, quotingEdwards, at 486, fn. 9.
 {¶ 16} In the case at bar, defendant himself kept the conversation going after his request about the availability of a public defender, asking, "[w]hy do I need a lawyer though. I mean, why am I here?" At that point, Detective Carney refused to engage in any dialogue with defendant about the investigation until defendant read and indicated that he understood the waiver portion of the "Constitutional Rights" form and signed the form. A signed waiver form, such as the "Constitutional Rights" form, is strong proof that a waiver of Miranda rights is knowing and intelligent. State v. Nields, 93 Ohio St.3d 6, 14,2001-Ohio-1291. Moreover, nothing in the record suggests that defendant waived his rights because his "will was overborne" or that "his capacity for self-determination was critically impaired because of coercive police conduct." Id. See, also, Gapen, at ¶ 53. Therefore, given the totality of the circumstances, we conclude that defendant validly waived his constitutional rights after initiating communication with the police, thus allowing Detective Carney to question him without the presence of a lawyer.
 {¶ 17} Accordingly, we overrule defendant's first assignment of error.
 {¶ 18} By his second assignment of error, defendant argues that the trial court violated the principles of Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, when it made the statutorily-required factual findings necessary for the imposition of non-minimum, maximum, and consecutive sentences upon defendant. We find this argument unavailing. This court has recently held that "a Blakely challenge is waived by a defendant sentenced after Blakely if it was not raised in the trial court." State v. Draughon, Franklin App. No. 05AP-860, 2006-Ohio-2445, at ¶ 8. See, also, State v. Davis, Franklin App. No. 05AP-538, 2006-Ohio-3707, at ¶ 17-24 (discussing the application of the waiver doctrine to claims that the Ohio sentencing statutes violated the Sixth Amendment when the sentencing occurred after Blakely). Here, defendant was sentenced at a hearing held over a year after the Supreme Court of the United States decided Blakely. Defendant, however, did not raise a Blakely challenge at his sentencing hearing or any other time prior to this appeal. Therefore, we conclude that defendant waived his Blakely challenge, and we overrule defendant's second assignment of error.
 {¶ 19} For the foregoing reasons, we overrule both of defendant's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
McGrath and Travis, JJ., concur.