OPINION
{¶ 1} Defendant-appellant, Frank J. Santiago, Jr., appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of burglary in violation of R.C. 2911.12, a second-degree felony, and receiving stolen property in violation of R.C. 2913.51, a fifth-degree felony. Defendant assigns a single error: *Page 2 
 ASSIGNMENT OF ERROR ONE
 WHERE THE POLICE FAILED TO OBTAIN A VALID WAIVER OF RIGHTS PRIOR TO INTERROGATING A SUSPECT, AND FAILED TO SCRUPULOUSLY HONOR A SUSPECT[']S ASSERTION OF HIS RIGHTS, THE ERRONEOUS ADMISSION INTO EVIDENCE OF THE SUSPECT'S SUBSEQUENT STATEMENTS TO THE POLICE CONTRAVENE THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.
Because the trial court properly denied defendant's motion to suppress, we affirm.
 {¶ 2} On March 26, 2007, at 6:10 a.m., Deputy Sheriff William J. Fitzpatrick was on patrol duty when he observed a beige Honda violate a red left turn signal as the car turned from southbound Hamilton Road to eastbound Refugee Road. Once Fitzpatrick pulled the car over, the front passenger, later identified as defendant, jumped out of the car. Having served 15 years on patrol duty, Fitzpatrick considered defendant's behavior to be abnormal for a traffic violation, and he told defendant to put his hands on the car where Fitzpatrick could see them. Fitzpatrick patted defendant down and asked him to stand in front of the car. Limping to the front of the car, defendant explained his injured leg required that he get out of the car. Fitzpatrick asked defendant if any guns or weapons were in the motor vehicle. Defendant responded "No, there is not. I just have some stuff there, work in the trunk." (Tr. 88.) Defendant then advised Fitzpatrick, "You can search the car if you want. I have nothing in there, just my stuff for my work in the trunk." Id.
 {¶ 3} Although Fitzpatrick attempted to talk to the female Hispanic driver, defendant interrupted him each time. When Fitzpatrick ultimately got the driver out of the car, defendant said, "Be careful, look out, she doesn't have any pants on." (Tr. 86.) The *Page 3 
driver had a towel wrapped around her from the waist down. She explained she had an accident in the car and put her clothing in the trunk. She had no valid driver's license.
 {¶ 4} Fitzpatrick placed the driver in his cruiser. After he finished speaking with her, he went back to the car, where defendant was still standing. Because the driver left the door open when she exited, Fitzpatrick could smell the odor of marijuana coming from the car. He asked defendant if defendant had been smoking; defendant replied he had not, but a few "blunts" probably were in the ashtray. Fitzpatrick found several and then searched the vehicle.
 {¶ 5} In the trunk Fitzpatrick found two coats, a couple of laptops with carriers, a Play Station 2 console, and two cell phones. One item had a name on it that did not match defendant's last name. Defendant explained he earlier was at a party, and one of the laptops belonged to a friend who had just flown to a new job in Nebraska. When Fitzpatrick asked defendant for the last name of his friend in Nebraska, defendant said he did not know it.
 {¶ 6} One cell phone had a contact entitled "dad." Fitzpatrick called, introduced himself and talked to a man who said his son had just called earlier to report someone broke into his apartment and stole "a bunch of their things." (Tr. 91.) The victim's father gave his son's telephone number to Fitizpatrick; Fitzpatrick then called the victims of the burglary, as well as law enforcement from Columbus to respond.
 {¶ 7} Detective Donna Welch, then with the Columbus Division of Police burglary squad, was called to the scene of the traffic stop. She was advised that defendant was a passenger in the car the deputy sheriff stopped for a traffic violation, that property recovered at the scene was traced back to a burglary in the campus area in the early *Page 4 
morning hours, and that defendant was a suspect in the burglary. Defendant was taken to the police interview room where he waived his rights and admitted to the burglary. As a result of an indictment filed April 5, 2007, defendant was charged with one count of burglary and one count of receiving stolen property. Defendant filed a motion to suppress on June 1, 2007, contending that in the interview he advised the detectives he wanted to speak with an attorney. As a result, defendant argued, all questioning should have ceased. Because it did not, defendant asserted any statement he made should be suppressed. He filed a second motion to suppress on September 13, 2007, contending Fitzpatrick was free to search only the interior of defendant's car, not the trunk.
 {¶ 8} Following the state's response, the court conducted an evidentiary hearing on both motions. The court overruled the first motion, rejecting defendant's contention that defendant unequivocally requested an attorney so as to trigger cessation of all questioning. The court nonetheless noted the detectives regarded defendant's statement as a refusal to speak in the absence of an attorney and ceased questioning defendant. The court determined defendant, not the detectives, initiated continuing communication. The court concluded that, given defendant's continuing communication with them, the detectives properly obtained a rights waiver from defendant, rendering his statements admissible. The court also overruled defendant's second motion to suppress related to Fitzpatrick's search of the Honda, determining defendant consented to the search of the car, including the trunk. The case was then tried to a jury that found defendant guilty on both counts. The trial court sentenced defendant to seven years on the burglary charge, to be served concurrently with 12 months on the receiving stolen property charge. *Page 5 
 {¶ 9} In his single assignment of error, defendant contends the trial court erred in overruling his first motion to suppress. Defendant asserts he unequivocally requested an attorney while he was in the police interview room, but the detectives failed to scrupulously honor his request for an attorney and continued to converse with him. Defendant thus maintains his waiver of rights was invalid and his statements to the detectives were inadmissible at trial.
 {¶ 10} "[A]ppellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact."State v. Vest (May 29, 2001), Ross App. No. 00CA2576. Thus, an appellate court's standard of review of the trial court's decision denying the motion to suppress is two-fold. State v. Reedy, Franklin App. No. 05AP-501, 2006-Ohio-1212, at ¶ 5, citing State v. Lloyd (1998),126 Ohio App.3d 95. Because the trial court is in the best position to weigh the credibility of the witnesses, "we must uphold the trial court's findings of fact if they are supported by competent, credible evidence." Id. We nonetheless must independently determine, as a matter of law, whether the facts meet the applicable legal standard. Id.
 {¶ 11} "Where, as here, a person is in custody and the police wish to interrogate him or her, the Sixth Amendment to the Constitution of the United States guarantees" that the person has "`the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to him before questioning begins.'" State v. Williams, Franklin App. No. 03AP-4, 2003-Ohio-7160, at ¶ 44, quoting Davis v. United States (1994), 512 U.S. 452, 457;Miranda v. Arizona (1966), 384 U.S. 436. "If a suspect requests counsel, all interrogation must cease until an attorney is present" or the suspect "initiates communication." State v. Curtis, Franklin. App. No. 05AP-795, 2006-Ohio-4230, *Page 6 
at ¶ 13, citing Edwards v. Arizona (1981), 451 U.S. 477, 481, andState v. Henness (1997), 79 Ohio St.3d 53, 63. "To invoke the right to counsel, a suspect must make a request with enough clarity that `a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" Id., citing Davis, supra, at 459.
 {¶ 12} As the United States Supreme Court explained, an unambiguous request for counsel under the Edwards rule provides law enforcement with a bright-line test to apply to interrogations, but permitting exclusion for something less than an unambiguous request leaves law enforcement uncertain and obviates the rule's "clarity and ease of application."Davis, supra, at 461. As a result, if a defendant's request for an attorney is ambiguous or equivocal, so "that a reasonable officer in light of the circumstances would have understood only that the suspectmight be invoking the right to counsel," law enforcement need not cease questioning to "clarify whether the suspect actually invoked his right to counsel." (Emphasis sic.) Williams, supra, at ¶ 44, citingDavis, supra, at 459; Curtis, supra, at ¶ 13, citing Davis, supra, at 461-462, and State v. Jackson, 107 Ohio St.3d 300, 2006-Ohio-1, at ¶ 93.
 {¶ 13} Here, the vast majority of the interaction between the detectives and defendant in the police interview room was recorded on videotape, played for the trial court, and transcribed in the record of the evidentiary hearing on defendant's motion to suppress. While the first moments in the interview room were not recorded, Welch filled in the gap, stating she introduced both herself and Detective Jerry James, told defendant she wanted to get his side of the story, and asked him if he wanted to make a statement about the burglary that occurred on campus that morning. After some verbal exchange, *Page 7 
Welch asked defendant if she could advise him of his constitutional rights. Defendant responded that "[t]hey did that already, so that is why I was wondering because, see, basically I guess I have to talk to [the lawyers] because I don't know what to answer yes or no." (Tr. 13.)
 {¶ 14} The initial issue in defendant's single assignment of error is whether defendant unequivocally requested an attorney when he stated, "I guess I have to talk to [the lawyers] because I don't know what to answer yes or no." (Tr. 13.) In Davis, the United States Supreme Court concluded that "[m]aybe I should talk to a lawyer" was not an unequivocal and unambiguous request for an attorney. Similarly, this court in Henness, supra, concluded Henness did not unambiguously invoke his right to counsel when he stated, "I think I need a lawyer, because if I tell everything I know, how do I know I'm not going to wind up with a complicity charge?" See State v. Bruhn, Lorain App. No. 03CA008364,2004-Ohio-2119 (holding "I don't know. Should I get one?" to be too ambiguous to invoke the right to counsel); State v. Holman (Dec. 21, 1999), Franklin App. No. 99AP-92; State v. Hanson (Sept. 13, 1996), Montgomery App. No. 15405 (determining "I think I might need to talk to a lawyer" is not an unambiguous request for an attorney);Williams, supra, at ¶ 50 (collecting cases that determined statements to be too ambiguous or equivocal to require law enforcement to terminate questioning).
 {¶ 15} Defendant's statement to the detectives does not differ significantly from the statement in Davis, Henness, or the cases collected in Williams that were deemed neither unequivocal nor unambiguous. Indeed, defendant's statement to the detectives incorporates the same ambivalence found in Davis: in Davis the defendant said "maybe" *Page 8 
and here defendant said "guess." The trial court properly concluded defendant's statement did not constitute an unambiguous and unequivocal request for an attorney.
 {¶ 16} Even though defendant's statement does not rise to the level of an unambiguous request for an attorney, Welch treated it so. She advised defendant that "we will just put you down for refusal, and we will just go ahead and charge you with the burglary and we will sort it all out in court." (Tr. 13.) The issue then becomes whether defendant initiated conversation with the detectives after his statement was treated as a request for counsel.
 {¶ 17} Defendant responded to Welch's statement by asking Welch "[w]hat happened to the lawyer and their asking questions?" Id. Welch advised they did not wait for lawyers to come to the interview room, but if defendant wanted to answer questions later "you can bring your lawyer at any time." Id. Defendant then asked, "So you guys are together, right? Basically this is what I am looking at. There is crooked cops; there is good cops, right? So I don't know who I am talking to, because I don't know who knows who. That is — what you think, it don't happen?" (Tr. 13-14.) Welch responded "[i]t happens. Go ahead." (Tr. 14.) Defendant then stated that, "[l]ike I said, I just want two things. I want to know what you want. I know you want a conviction because basically the shit (unintelligible)." Id.
 {¶ 18} Welch told defendant she was not concerned about a conviction, but had a job to do. She noted defendant "asked for a lawyer like three or four times." (Tr. 14.) She advised defendant "we had better wait until you get a lawyer because I don't want to violate your constitutional rights." Id. Defendant responded, "If you want. I just need to *Page 9 
know where this is heading. Am I going to jail?" Id. Welch advised defendant he was going to jail regardless of his statement.
 {¶ 19} Defendant stated, "Okay, I understand that. I'm getting charged with — ." Welch interrupted and stated, "Burglary, F-2, a felony of the second degree. If you would like to talk some more about this, we can sit down and read you your rights, have you sign a rights statement, and then we can start from the beginning. You seem to be very concerned about an attorney, so — ." (Tr. 14-15.) Defendant responded, "Because I am on (unintelligible). Okay? I could be shot easily just the same as out there. I am very detailed in what I do." (Tr. 15.) Defendant then engaged in a discourse about street shootings. Welch stopped him and advised him of his Miranda rights. Defendant waived them. He then conceded he walked into the front door of the residence where the burglary occurred and took the items recovered from the trunk of the Honda.
 {¶ 20} Even if defendant invoked his right to an attorney, the detectives could resume questioning if defendant "initiate[d] further communications, exchanges or conversations with the police."Edwards, supra, at 484-485. In Oregon v. Bradshaw (1983), 462 U.S. 1039,1045-1046, the court held the defendant initiated further discussion when he inquired "well, what is going to happen to me now?" Similarly, defendant's statement here initiated the subsequent conversation with the detectives when he asked, "What happened to the lawyer and their asking questions?" (Tr. 13.) Were that not sufficient to initiate the conversation with the detectives, defendant, after further statements to the detectives, asked, "I just need to know where this is heading. Am I going to jail?" (Tr. 14.) The detective answered the question and brought up the waiver, noting defendant seemed to be concerned about an attorney. Defendant *Page 10 
nonetheless continued to talk to the detectives. Given those circumstances, the trial court did not err in concluding defendant's statement evinced a willingness and desire for generalized discussion about the investigation. Oregon, supra.
 {¶ 21} Noting law enforcement typically explains to a detainee the reason he or she is being held and then reads the waiver of rights form to him or her to determine whether or not the detainee will make a statement, defendant points out that the detectives here did not follow the usual procedure. Instead, they stopped asking defendant questions because a lawyer was not brought into the interview room. While defendant concedes the detectives acted appropriately, he contends the procedure they employed was confusing because the detectives had not yet read defendant his rights. The transcript, however, reveals Welch attempted to advise defendant of his rights, but defendant's garrulous manner prevented the detective from conducting the interview in the usual procedure. Given how talkative defendant was, the detectives cannot be faulted for initially concluding defendant invoked his right to counsel but then procuring defendant's waiver of rights after defendant continued the conversation.
 {¶ 22} In the final analysis, even if defendant unequivocally invoked his right to counsel in the police interview room, he initiated the subsequent conversation with law enforcement. The trial court did not err in denying defendant's motion to suppress his statements made after he waived his rights. Defendant's single assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
 KLATT and FRENCH, JJ., concur. *Page 1